UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------
Andre Antrobus,

               Plaintiff,

     - against -

Mid-Hudson Forensic Psychiatric
Center, Dr. Rhad, Treatment Team
of Building 3, Ginger Andre,
Dr. Pal, T.A. Wiggins, and
T.A. Noel,

               Defendants.
-----------------------------------

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2-27-13

11 Civ. 7411 (ALC)(RLE)

OPINION & ORDER

ANDREW L. CARTER, JR., District Judge:

I.   Introduction

On October 18, 2011, pro se Plaintiff Andre Antrobus, a former patient at Mid-Hudson Forensic Psychiatric Center ("Mid-Hudson") filed a Complaint pursuant to U.S.C. § 1983, alleging his First Amendment right of access to the courts was violated when Defendants Dr. Rhadhakrishnan ("Dr. Rhad"), Ginger Andre, T.A. Wiggins, T.A. Noel Collins, and Dr. Pal (collectively "Defendants") interfered with his mail. On May 25, 2012, Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants' Motion to Dismiss is GRANTED, as Plaintiff has failed to exhaust

1

all administrative remedies regarding the mail conditions at Mid-Hudson.

## II. Background

Mid-Hudson is designated as a secure facility by the New York State Office of Mental Health, providing treatment to individuals retained under New York State Criminal Procedure Law § 730. Mid-Hudson seeks to rehabilitate patients so they are fit to stand trial and care for patients who are thought to be a danger to themselves or others. Plaintiff was referred to Mid-Hudson pursuant to a May 26, 2011 order, which found him unfit to proceed in his criminal trial for Attempted Murder in the Second Degree. He remained a patient at Mid-Hudson from August 3, 2011 to October 27, 2011.

### A. Mid-Hudson Mail Policy

In accordance with Mid-Hudson's mail policy,[1] patients are required to give outgoing mail to a Secure Hospital Treatment Assistant ("SHTA"),[2] who gives it to a Senior SHTA staff member for further handling. The Senior SHTA then forwards the mail to the Supervisor's Office. The Visiting Area staff picks up the mail at the Supervisor's Office or in the dining room and

---

[1] Mid-Hudson's mail policy is fully set forth in the Facility Policy & Procedure Manual. (Khan Aff., Ex. B.)
[2] Secure Hospital Treatment Assistants are facility employees tasked with ensuring that the premises remain safe as well as performing certain administrative tasks. Specifically, in the context of mail, the SHTA acts as a carrier for placing outgoing mail into the mailbox and inspecting incoming mail for contraband. (Def. Mot. at 3 n.4.)

delivers it to the facility mail room on a daily basis. Finally, a driver transports the mail to the local United States Post Office.

A patient's ability to send mail may be limited if it is determined that the mail is "clinically and legally contraindicated." Outgoing mail may also be examined for clinical and/or security reasons by written order of a physician. Inspections seek to ensure the mail contains no contraband or weapons. Moreover, if a recipient informs Mid-Hudson he objects to mail received from a patient, Mid-Hudson staff informs the patient and records the objection in the patient's Uniform Case Record.

Mid-Hudson receives incoming mail five days per week. A Safety or Security Officer processes the mail through an x-ray machine to check for weapons and contraband. If an item is thought to contain contraband, the SHTAs open the mail upon consent from the patient. If the patient refuses to consent, the package is returned to the sender.

### B. Plaintiff's Allegations Regarding Mail Delivery

Plaintiff alleges that on various occasions his outgoing mail was withheld, opened, and read. (Compl. § II.D.) Plaintiff claims the first instance of alleged interference with his mail occurred on August 4, 2011, when he sent six sets of mail to "parole court and regular court." (Id.) Plaintiff contends this

3

mail was held for twenty-five days resulting in his case being dismissed due to untimely filings. (Id.) On August 5, 2011, Plaintiff states he sent mail to his family, but makes no allegations as to what happened to the mail. (Id.) Plaintiff sent a letter to the Orange County Courts on August 27, 2011, "pressing charges on individuals who were assaulting and robbing me." (Id.) He speculates that because there was no response to this letter, "it's like they [the treatment team] open[ed] it." (Id.) On August 15, 2011 and September 1, 2011, Plaintiff claims "many mails came back open[ed] that I sent out weeks ago." (Id.) Plaintiff alleges on September 18, 2011 and September 30, 2011, "several of [treatment] team open[ed] letters in front of clients and withheld mail[.]" (Id.) Lastly, on October 2, 2011 and October 5, 2011 "mail was selected to go out [and] some did[.] [M]ost others didn't." (Id.) It is unclear whether all of the allegations involve Plaintiff's mail or the mail of other patients.

### III. Discussion

Defendants argue Plaintiff's Complaint should be dismissed on the grounds that: (1) Plaintiff failed to state a claim that his First Amendment right of access to the courts was violated; (2) Mid-Hudson staff are entitled to qualified immunity; (3) Plaintiff failed to allege Dr. Rhad's and Dr. Pal's personal

involvement in the mishandling of the mail; and (4) Plaintiff failed to exhaust his administrative remedies.

**A. Administrative Exhaustion under the PLRA**

The Prisoner Litigation Reform Act ("PLRA") states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1996). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). Exhaustion is an affirmative defense. Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009). Therefore, "[d]ismissal under Rule 12(b)(6) for failure to exhaust is thus appropriate . . . where nonexhaustion is apparent from the face of the complaint." Roland v. Smith, No. 10 Civ. 9218 (VM), 2012 WL 601071, at *2 (S.D.N.Y. Feb. 22, 2012).

Plaintiff filed the Complaint when he was in Mid-Hudson pursuant to an order finding he was not fit to stand trial for criminal charges pending against him. Accordingly, he is considered a "prisoner" under the PLRA, and the exhaustion requirement applies to this case. See Gibson v. City Municipality of New York, 692 F.3d 198, 199 (2d Cir. 2012) (per curiam) ("[A] person who has been charged with a crime and is

5

being held prior to trial under a temporary order of observation at a mental health institution, pursuant to New York state law, is a 'prisoner' within the meaning of the Prison Litigation Reform Act.").

**B. Mid-Hudson's Grievance Policy**

Mid-Hudson's grievance procedure[3] requires a patient first speak to his or her treatment team about any complaints. If the issue is not resolved, the patient should then contact a Unit Manager or Program Manager. Provided the patient has not received a satisfactory response, he may dial the in-house number and leave a message for a patient advocate, who will contact him within one day. In addition, the patient may also submit a complaint in writing to the Risk Management Department at Mid-Hudson by using the facility mailing system or giving the complaint to a staff member. A patient who is still unsatisfied with the resolution of the complaint, should write to the Executive Director, who will provide the patient with information on how to contact the Joint Commission.

In the event Mid-Hudson's procedure has not satisfactorily addressed a patient's concerns, there are further avenues for the patient to pursue through "Alternative Sources of Advocacy". Patients are encouraged to speak to staff members' superiors if

---

[3] The procedure for filing complaints is contained in Mid-Hudson's Patient Information Handbook. (Khan Aff., Ex. D.)

6

they are unsuccessful or displeased with the results of a complaint. Patients are also encouraged to communicate with the Clinical Director or Executive Director to express concerns. Lastly, patients are given contact information for the Mental Hygiene Legal Service, the Office of Mental Health, and the New York State Commission on Quality Care and Advocacy for Persons with Disabilities.

## C. Plaintiff's Failure to Exhaust Administrative Remedies

The Second Circuit has held "Section 1997e(a) requires 'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" Hernandez v. Coffey, 582 F.3d 303, 305 (2d Cir. 2009) (quoting Woodford v. Ngo, 548 U.S. 81, 90 (2006)) (emphasis in original). Generalized complaints may not be used in lieu of the process set forth by Mid-Hudson to address grievances. See Johnson v. Killian, 680 F.3d 234, 239 (2d Cir. 2012) (rejecting the proposition that "generalized complaints regarding the conditions of an inmate's confinement will suffice to shortcut the administrative remedy process").

Plaintiff raised a documented complaint about interference with his mail on October 7, 2011. The complaint report reads, "Pt Antrobus called with the complaint that his outgoing mail is not being sent out and some of his mail is being opened by others." (Khan Aff., Ex. C.) The report further states,

7

> Mr. Antrobus stated that he has placed mail in the box on the ward. He states some of it is going out but some has not reached its destination. Then he stated that some of it did not have stamps, so that explains why it did not make it.

(Id.) The complaint was resolved by Unit Manager Ginger Andre on October 7, 2011.

In addition to the October 7 complaint, Plaintiff alleges he "call[ed] grievance and complaints on several occasion[s] . . . in facility and in Albany" and "told the staff on several occasions [about interference with the mail.]". (Compl. §§ IV.B-G.) These attempts resulted in being "directed . . . back to people who opened the mail and did not deliver it" and no one seeing Plaintiff to discuss his concerns. (Id. §§ IV.E.2-3.) Plaintiff, at one point, "had a group session about the mail not [being] delivered and dening [sic] access to the courts and government bodies." (Id. § IV.F.2.)

Plaintiff makes some increasingly incoherent allegations about being "given the 'run around' . . . from the grievance and appeals were totally ignored also letters to higher ups as (I.G.R.P.) special investigations . . . and Department of Corrections." (Pl. Opp. at 2.) Plaintiff claims he has made several grievances, appeals, and notices using "code 144" to "the warden", "the special investigation unit", the "Department

8

of Corrections", and other entities associated with the Bureau of Prisons, not with Mid-Hudson. (Id. at 3-4.)[4]

The allegations of Plaintiff's various phone calls to "the facility" and the "head office" in Albany following the October 7 complaint are not sufficient to conclude Plaintiff properly exhausted his procedural remedies. See Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007) (concluding where Plaintiff did not comply with procedural rules, his informal complaints did not satisfy the PLRA's exhaustion requirements). After taking his complaint to team members and speaking with Ms. Andre, Plaintiff's attempts to have his grievances resolved are informal and improper. He did not seek the assistance of a patient advocate or file a written complaint with the Risk Management Department at Mid-Hudson. He did not write to the Executive Director or appeal to the Joint Commission. Further, Plaintiff did not seek out one of the alternative sources of advocacy, though optional in the grievance process, to assist him with a resolution.

In Hemphill, a three-part analysis was set forth to determine if a court should grant a motion to dismiss for failure to exhaust administrative remedies. The analysis asks whether: (1) administrative remedies were available to the

---

[4] Plaintiff was formerly an inmate at Rikers Island, which may explain his references to grievance procedures commonly used by the Bureau of Prisons. See Antrobus v. Warden of GRVC, No. 11 Civ. 5128 (JMF), 2012 WL 1900542 (S.D.N.Y. May 25, 2012). These procedures are separate and apart from Mid-Hudson's procedures.

9

prisoner; (2) the defendants forfeited the affirmative defense of non-exhaustion or if the defendants' own actions estop them from raising exhaustion as a defense; and (3) "special circumstances" have been alleged justifying failure to comply with administrative procedural requirements. Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).

Application of the Hemphill analysis is fatal to Plaintiff's claims. Mid-Hudson's Patient Information Handbook sets forth the procedures for filing a complaint in simple and clear terms. See discussion supra Part III.B. These procedures were available for Plaintiff to utilize. Indeed, Mid-Hudson responded to Plaintiff's initial complaints by having Plaintiff speak with Ms. Andre and scheduling a group session regarding mail delivery and access to the courts. If Plaintiff was dissatisfied with this response, he had further administrative levels to exhaust before turning to the courts.

The second and third parts of the analysis are equally unfavorable to Plaintiff. Since Defendants raised exhaustion as a defense in their Motion to Dismiss, there is no basis to find waiver or forfeiture. Turning to the question of estoppel, Plaintiff claims there were barriers to filing grievances, but his claims are implausible.[5] Due to the complete lack of clarity

---

[5] Plaintiff submits pages of accusations about corrections officers conspiring to intercept his complaints, so that they cannot be filed with the Inmate Grievance Resolution Program ("IGRP") and the warden. (Pl. Opp. at 2-4.)

10

regarding these allegations, Defendants should not be estopped from raising exhaustion as a defense. Finally, no special circumstances have been alleged, plausible or otherwise, justifying Plaintiff's failure to comply with Mid-Hudson's grievance process.

## IV. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**. The Court need not pass upon the merits of the parties' remaining arguments. Plaintiff's Motion Not to Dismiss the Complaint is **DENIED**, and The Complaint is **DISMISSED** in its entirety. The Clerk of Court is respectfully directed to close this case and to enter judgment in accordance with this Order.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied. See Coppedge v. United States, 369 U.S. 438 (1962).

SO ORDERED.

Dated: New York, New York
February 27, 2013

Andrew L. Carter, Jr.
United States District Judge

11